IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

GREEN LIGHT INNOVATIONS, INC.,     )
            )
            )
    Plaintiff,        )   Civil Action No. 1:21-cv-03605-JPB
            )
    v.            )
            )
BRIT-TECH MANUFACTURER LLC, and AMERI HOMELINK, LLC, d/b/a MAXLIT   )   JURY TRIAL DEMANDED
            )
            )
    Defendants.     )

## **DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND .............................................................................1

LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ..........................................4

DISPUTED CLAIM TERMS ...............................................................................6

    I.     "a light barrier" (Claims 1, 8, and 15).....................................6

    II.    "wherein the outer cover is divided into two visible segments by the light barrier" (Claim 16).........................................................................14

    III.   "the light barrier extends along a centerline of the elliptical shaped border" (Claim 17) ...............................................................................22

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003) ............................................................................5

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ..........................................................................21

*Markman v. Westview Instruments*,
517 U.S. 370 (1996) .............................................................................................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ............................................................................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 4, 5, 6

*Trs. Of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016) ..........................................................................21

## INTRODUCTION

Pursuant to the Court's Scheduling Order (D.I. 20), Defendants Brit-Tech Manufacturer LLC and Ameri Homelink, LLC, d/b/a Maxlit (jointly "Defendants") submit this opening brief in support of their proposed constructions of the disputed claim terms in Plaintiff Green Light Innovations, Inc.'s ("Green Light" or "Plaintiff") U.S. Patent No. 9,153,150 ("the '150 patent") (attached as Exhibit A).

The parties dispute the meaning of three terms or phrases in the asserted claims. Defendants' proposed constructions are drawn from, and faithful to, the '150 patent and the intrinsic evidence, in addition to being supported by reliable extrinsic evidence as appropriate. Defendants' constructions will also assist the jury in understanding the proper scope of the asserted claims. Accordingly, Defendants respectfully request that the Court adopt their proposed constructions.

## FACTUAL BACKGROUND

The '150 patent is entitled "Lighting Assembly Having Enhanced Visual Appearance," and relates to "lighting assemblies" and, more specifically, to lighting assemblies having enhanced visual appearances for displaying a message or representation." (Ex. A, 1:28-30.)[1] In each of the embodiments shown in Figures 1-10 of the '150 patent, the message or representation shown is the word "OPEN,"[2]

---

[1] References to patent columns and lines are signified by the following shorthand: [Column No.] : [Line No(s).].

[2] The embodiment shown in Figure 10 includes a "display indicated generally at 2135," which is "configured to display messages, indicia, representations, or other graphic elements" (Ex. A, 12:24-26); however, the display area 2135 is depicted as

1

and each depicted embodiment is what would colloquially be referred to as an "open sign."

As demonstrated by annotated Figure 2, below, each embodiment of the lighting assembly includes a first light source, which illuminates the message, and a second light source, which illuminates a border extending at least partially around the message. The light sources are each positioned within a housing assembly with covers positioned over the light sources. The housing assembly comprises a housing compartment and a base.



FIG. 2

**Figure 2 of the '150 Patent (Annotated)**

_____

a blank surface in Figure 10. No other messages or representations are shown.

The '150 patent indicates that when multiple different colored light sources are used within the same sign, "the different colored light sources tend to interfere or 'bleed' with one another, resulting in undesired lighting effects." (Ex. A, 1:27-29.) The '150 patent depicts two general types of light barriers to address this issue.

A first type of light barrier, shown in Figures 1-4 ("Type 1" light barriers), is integrally formed with or coupled to the housing compartment 114 of the housing assembly 102, as demonstrated by light barriers 318, 320, 322. (*Id.*, 4:6-11.) Type 1 light barriers are described as being "configured to prevent interference between the first light source and the second light source." (*Id.*, 1:43-45, 1:58-59; *see also id.*, 6:4-8.) This language is substantially included in independent claims 1 and 8.

A second type of light barrier, shown in Figures 6-9 ("Type 2" light barriers), is spaced apart from the housing assembly and is instead coupled to the outer cover defining the border extending around the message or representation, as demonstrated below by annotated Figure 7. (*Id.*, 9:66-10:8.) The Type 2 light barrier is described as being "disposed on the outer cover to block light from the second light source. (*Id.*, 1:4-5; *see also id.*, 10:53-56.) This language is substantially included in the limitations of independent claim 15.

3



FIG. 7

**Figure 7 of the '150 Patent (Annotated)**

The '150 patent includes several references to other embodiments of light barriers; however, the other embodiments are not shown in the figures. (*Id.*, 4:8-11; 10:6-8.)

**LEGAL PRINCIPLES OF CLAIM CONSTRUCTION**

Claim construction is a question of law for the court. *Markman v. Westview Instruments*, 517 U.S. 370, 378 (1996). The Federal Circuit's 2005 en banc decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) comprehensively sets forth the controlling claim construction principles. The claims of a patent define the invention, and claim terms are generally given their ordinary and customary meaning

4

as understood by a person of ordinary skill in the art at the time of the invention, i.e., as of the effective filing date of the patent. *Id.* at 1312-13.  The intrinsic evidence for construing a claim consists of "the claims, the other portions of the specification, and the prosecution history (if any, and if in evidence)." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003).

As a starting point, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1313. For example, "the context in which a term is used in the asserted claim can be highly instructive." *Id.* Because claims do not stand alone, they must also be read in view of the entire specification, of which they are a part. *Id.* at 1315. The specification "is always highly relevant to the claim construction analysis" and will usually be dispositive. *Id.* (internal quotations omitted). As a result, the specification "is the single best guide to the meaning of a disputed term." *Id.* (internal quotations omitted).

The court may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including . . . dictionaries, and learned treatises." *Id.* Such resources may provide useful insight into the proper claim construction because they may help the court to better understand "the way in which one of skill in the art might use the claim terms." *Id.* at 1318. Because extrinsic evidence is viewed as generally less reliable than the patent and its prosecution history in determining how to read claim terms, extrinsic evidence must be considered in the context of the intrinsic evidence and cannot be used to contradict

a definition based on the intrinsic evidence. *Id.* at 1318-19, 1323.

## DISPUTED CLAIM TERMS

### I.    "a light barrier" (Claims 1, 8, and 15)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | "a light barrier that is not integrally formed with any part of the housing assembly" |

Independent claims 1, 8, and 15 of the '150 patent each recite the separate limitations of both "a housing assembly" and "a light barrier." Independent claim 1, reproduced below, exemplifies the claim structure that is common to each independent claim:

> 1. A lighting assembly comprising:
>
> *a housing assembly*;
>
> a first light source located within the housing assembly;
>
> a second light source located within the housing assembly:
>
> a first cover positioned relative to the first light source so that the first light source is able to illuminate the first cover;
>
> a second cover positioned separately from the first cover and relative to the second light source so that the second light source is able to illuminate the second cover; and
>
> *a light barrier* disposed between the first and second covers, the light barrier being configured to prevent interference between the first light source and the second light source.

(Ex. A, Claim 1 (emphasis added).)

While Plaintiff asserts that no construction is necessary for this term (*see* Doc.

6

27; Plaintiff's Preliminary Identification of Proposed Terms for Construction, attached as Exhibit B), there is a fundamental dispute between the parties regarding the scope of this limitation that the Court will need to resolve. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute"). Specifically, the parties dispute whether the asserted claims' separate recitation of "a housing assembly" and "a light barrier" can be satisfied by two integrally formed portions of a single structure or whether two discrete structures are required.

As demonstrated below, the scope of the limitation "a light barrier" cannot be satisfied by an integral portion of the housing assembly. Something more than two integrally formed portions of the same physical body is required. This understanding flows naturally from the claim structure and finds support in both the specification and the prosecution history for the '150 patent, which are discussed in turn below.

With respect to Figures 1-3 (which depict the Type 1 light barriers), the '150 patent states that the "the housing assembly 102 includes a base, indicated generally at 112, and a housing compartment, indicated generally at 114." (Ex. A, 3:5-7.) This statement establishes that the base 112 and the housing compartment 114 are each regarded as parts of the housing assembly 102.

Consistent with this understanding, the '150 patent further states as to Figures

7

1-3 that "the housing compartment 114 (*and thus the housing assembly 102*) includes first, second, and third light barriers 318, 320, 322. In the illustrated embodiment, the light barriers 318, 320, 322 *are integrally formed as part of the housing compartment 114*." (*Id.*, 4:4-7 (emphasis added).) These statements demonstrate that where the light barriers are integrally formed with the housing compartment of the housing assembly, the light barriers are understood to be *a part of the housing* compartment 114. Because light barriers 318, 320, and 322 are considered to be the housing compartment 114, this excerpt teaches that the light barriers are considered to be a part of the housing assembly 102, which is consistent with the previous excerpt from the specification.

The '150 patent confirms this understanding later in the specification. For example, in a later excerpt discussing the embodiment of Figure 1 (wherein the light barriers 318, 320, 322 are integrally formed with the housing compartment 114), the '150 patent refers to these structures as "the first, second, and third light barriers 318, 320, 322 *of the housing assembly 102*." (*Id.*, 6:1-2 (emphasis added).)

Notably, the specification also describes several embodiments where the light barriers are formed separately from the housing assembly, and the '150 patent provides no indication that the light barriers would be understood to be part of the housing assembly under these circumstances. For example, the '150 patent indicates that "[i]n other embodiments [than those shown in Figures 1-3], one or more of the light barriers 318, 320, 322 can be formed as separate pieces and removably or

8

fixedly coupled *to the housing compartment 114*." (*Id.*, 4:8-11 (emphasis added).) The phrasing that the light barriers 318, 320, 322 can be "coupled to the housing compartment" discloses that in these embodiments, the light barriers would not be understood to be part of the housing compartment (as opposed to a phrasing such as "one or more the light barriers 318, 30, 322 can be formed as separate pieces and are fixed or removable parts of the housing compartment 114"). The '150 patent provides no indication that the light barriers would be considered to be part of the housing assembly under these circumstances. This understanding is confirmed by subsequent comments made during the prosecution history, which is discussed following this analysis of the specification and drawings of the '150 patent.

Turning to the Type 2 light barrier 3180, shown in Figures 6-9, no contact or engagement is depicted between the housing assembly 1020 and the light barrier 3180, which is formed as a separate component from the housing assembly 1020. Instead, the light barrier 3180 is coupled to the border 1180 in these embodiments. With respect to this configuration, the light barrier 3180 is never described or implied to be a part of the housing assembly 1020. (*See e.g., id.*, 9:54-10:8, 10:53-11:9, 11:46-51.)

In view of this analysis, where a light barrier is integrally formed with a portion of the housing assembly, the light barrier would be understood to be *part of* the housing assembly rather than a separate element from the housing assembly. Stated another way, if a light barrier is understood to be a separate element from a

housing assembly, the light barrier cannot be integrally formed with the housing assembly.

As indicated above, this understanding is confirmed by Green Light's representations to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of U.S. Application No. 13/918,216 (the '216 application"), which issued as the '150 patent. On January 26, 2016, the USPTO issued a Non-Final Office Action (the "NFOA," attached as Exhibit C), which rejected each of the pending independent claims 1, 8, and 15 under 35 U.S.C. § 102 for being anticipated by U.S. Patent 3,758,973 to Miller ("Miller," attached as Exhibit D), which teaches a "One Piece Character Display Device." (Ex. C, pp. 2-4.) The USPTO Examiner primarily relied upon Figures 1 and 2 of Miller (reproduced below) as teaching the elements of the independent claims. (*Id.*)



**Figures 1 and 2 of Miller**

10

The prosecution history of independent claim 8 is of particular relevance to the claim construction under consideration. With respect to this claim, the Examiner indicated that element 13 of Miller taught the limitation of "the cover assembly including at least one inner cover defining a word and an outer cover at least in part defining a border surrounding the word defined by the inner cover," and further indicated that element 15 was interpreted as teaching the word, itself. (Ex. C, p. 3.) Element 13 refers to a "primary face" of the main housing 11, which is formed as *one piece* of material. (*See e.g.* Ex. D, 1:31-38; 2:6-10, 18-20, 37-42; Abstract.) Element 15 refers to one of the "character forming segments," that are defined by thinned portions of the primary face 13, which in turn are formed by cutting grooves into the primary face 13 of the one-piece main housing 11. (*Id*. at 2:18-28.)

Green Light responded to the rejection of independent claim 8 in a Response to the NFOA mailed on April 15, 2015 (the "NFOA Response," attached as Exhibit E), which included the following remarks:

> With all due respect, the test under M.P.E.P. § 2131 requires that each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference and the elements must be arranged as required by the claim. *As disclosed by the Miller reference, the face (13) is a <u>single, integral</u> cover that overlays the interior cells. In contrast, the claim recites at least one inner cover and an outer cover. Applicant respectfully submits that the Office action on page 3 is silent with respect to notating where the Miller reference discloses an inner cover and an outer cover*.
>
> As Miller fails to teach each and every limitation of Applicant's claim 8, Applicant submits that Miller fails to anticipate claim 8 of the instant application.

11

(Ex. E, pp. 9-10 (underlining reproduced from original, italics added). In other words, Green Light represented to the USPTO that a <u>single, integral</u> structure does not teach two elements, even without an express indication in the claim language that the elements were separate from one another in some regard.[3] In response to these representations, the Examiner withdrew the rejection of independent claim 8, and the '216 application issued into the '150 patent.

Similar to Green Light's position that a single, integral structure cannot be both "an inner cover" and "an outer cover," here, a single, integral structure cannot be both "a housing assembly" and "a light barrier." Separate recitation of these structures requires more. For at least these reasons, the recitation of "a light barrier" separately from the element of "a housing assembly" is properly construed to mean "a light barrier that is not integrally formed with any part of the housing assembly."

---

[3] Independent claim 1 was rejected by the Examiner based on an interpretation of Miller wherein the same integral structure, the primary face 13 of the housing 11, was characterized as "a first cover" and "a second cover." (Ex. C, pp. 2-3.) Independent claim 15 was rejected by the Examiner based on an interpretation of Miller wherein the primary face 13 of integral housing 11 was characterized as teaching "an outer cover" and the partition 33, which is integrally formed with the primary face, was characterized as "a light barrier." (*Id.*, p. 5.) These rejections were overcome by amendments that read "a second cover positioned <u>separately from the first cover</u>" with respect to independent claim 1 and "a light barrier ~~disposed on the~~ <u>is formed separately from and coupled to</u> the outer cover" with respect to independent claim 15. (Ex. E, pp. 1, 6.) The significance of the prosecution of independent claim 8 is that the claim language *does not* explicitly require the at least one inner cover to be "positioned separately" or "formed separately" (or separate in any other regard) from the outer cover, yet Green Light indicated that both of these limitations cannot be satisfied by "a single, integral cover."

The parties' fundamental dispute regarding this claim term is demonstrated by Green Light's infringement contentions for the Accused Products. (Green Light's infringement contention chart is attached as Exhibit F.) For example, Green Light consistently characterizes the limitation of "a light barrier" as being satisfied by the same black material that allegedly satisfies the limitation of "a housing assembly" (Ex. F at pp. 69, 72, 74, 77, 79, 82, 85), as exemplified by "Screenshot A2" of Green Light's contentions:



**Screenshot A2 of Green Light's Infringement Contentions**

While Green Light's apparent interpretation of the claim's scope might arguably suffice if the claim language recited "a housing assembly comprising a light barrier," this interpretation contradicts the plain and ordinary meaning of "a light barrier" recited separately from "a housing assembly" as in the asserted claims.

For at least these reasons, the Court should construe this disputed limitation

and adopt Defendants' proposed construction.

## II.   "wherein the outer cover is divided into two visible segments by the light barrier" (Claim 16)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | "wherein a section of the outer cover defines a cross-sectional shape that is divided into two visible segments by the light barrier" |

The parties also have a fundamental dispute regarding the scope of this limitation, and particularly the usage of "segments" as it appears in claim 16, which the Court will need to resolve. Although Green Light does not propose a construction for this term, Green Light's infringement contentions evince an apparent interpretation (particularly for the term "segments") that is contradictory to the specification and drawings of the '150 patent.

As an initial matter, the Accused Products can be grouped into two general categories of products: (i) Outlined Products, wherein a first illuminated arc extends above the word "OPEN," and a second illuminated arc extends below the word "OPEN;" and (ii) Underlined Products, wherein two illuminated lines extend under the word "OPEN." With reference to Green Light's infringement contentions, Screenshots A1-E5 (Ex. F at pp. 69-81) depict Outlined Products while Figures F1-G4 (Ex. F at pp. 82-86) depict Underlined Products.

Screenshots A3 and F2 (reproduced below) exemplify how Green Light has annotated the Outlined Products and the Underlined Products, respectively. For both

14

the Outlined Products and the Underlined Products, Green Light offers the same textual explanation ("the outer cover is divided into two visible segments (e.g., an upper segment and a lower segment) by the light barrier") contending that the Accused Products allegedly include this disputed claim limitation. (Ex. F at pp. 10, 20, 30, 40, 50, 59.)



**Screenshot A3 of Plaintiff's Infringement Contentions**



**Screenshot F2 of Plaintiff's Infringement Contentions**

Based on its contentions, Green Light seemingly misinterprets the term "segments" as used in the claim language to refer to what the specification identifies as "section(s)." The word "section(s)," however, is used in the specification with respect to the outer cover (or border) only to describe embodiments wherein the outer cover or border is discontinuous (*i.e.* formed in multiple, discrete parts). Specifically, "section" is used to refer to each discrete portion of the overall shape of the outer cover or border.

For example, with respect to Figure 1, which shows a two-piece border, the '150 patent states that "[i]n the illustrated embodiment, the border 118 includes a first border <u>section</u> 128 and a second border <u>section</u> 130." (Ex. A, 3:15-17 (underlining added).) As shown in Figure 1, the first border section 128 refers to the top arc of the border 118, and the second border section 130 refers to a bottom arc

16

of the border 118. Notably, the border sections 128, 130 are discontinuous.

Continuing with the description of Figure 1, the '150 patent discloses that "[i]t is understood that the border 118 can be [sic] have more or fewer than two sections without departing from some aspects of this disclosure." (*Id.*, 3:17-19 (underlining added).) Correspondingly, the '150 patent teaches with respect to Figure 6 that "[i]n the illustrated embodiment, the border 1180 is continuous. It is understood that the border 1180 can be divided into discontinuous sections without departing from some aspects of this disclosure." (*Id.*, 9:51-53 (underlining added).)

From these excerpts, it is apparent that in the lexicon of the '150 patent, the term "section" (*not* "segment") is used to describe discrete portions of the discontinuous outer cover or border. As demonstrated below, the '150 patent imparts a specific meaning to the term "segment" that is quite different from the meaning of "section."

Specifically, "segment(s)" appears seven (7) times in the specification, and each usage refers to a portion of the *cross-sectional shape* of a structure. For example, six instances of "segment(s)" relate to Figure 4 (reproduced below), which shows a partial cross-sectional view of the lighting assembly of Figure 1.

17



## FIG. 4
**Figure 4 of the '150 Patent**

The '150 patent explains that:

Still referring to FIG.4, the first light barrier 318, includes a front segment 514, a pair of angled segments 516,518, and a pair of opposed side segments 520, 522. The first light barrier 318 also includes a front surface 524 defining the forward- or outer-most surface of first light barrier 318. In the illustrated embodiment, each of the other light barriers 320, 322 includes front segments, angled segments, side segments, and front surfaces substantially similar to those of the first light barrier 318.

(*Id.*, 8:46-54 (underlining added).)

The final instance of "segments" is used with respect to Figures 8 and 9.

Figure 9 and the relevant excerpt from the specification are shown below:

18



FIG. 9

**Figure 9 of the '150 Patent**

> In the illustrated embodiment, the light barrier 3180 extends continuous along an apex (or centerline) of the border 1180, which is generally elliptical. *As a result, the border 1180 is divided into two visible <u>segments</u> by the light barrier 3180.* As a result, during use of the lighting assembly 1000, the border 1180 appears as two discrete borders to an observer with one of the borders being located outside the light barrier 3180 and the other border being located inside the light barrier.

(*Id.*, 9:55-63 (underling and italics added).)

The emphasized sentence, above, demonstrates the correct understanding of the claim language of dependent claim 16. In fact, this excerpt provides the *only* support in the specification for the limitations of dependent claim 16. Notably, the embodiment of Figures 8 and 9 includes a border 1180 that is continuous. (*Id.*, 9:50-51.) Therefore, the inventor's use of "segments" in the '150 patent cannot refer to discrete portions of a discontinuous border, as implicated by Green Light's apparent interpretation. Instead, it is clear that the "segments" in question refer to portions of the cross-sectional shape of the respective border section(s) rather than to the overall

19

shape defined by the border 1180 (*i.e.* the rounded parallelogram shape shown in Figure 8).

As demonstrated by the preceding analysis, Green Light's apparent understanding of the scope of the claim incorrectly interprets the term "segments," to encompass "sections" as disclosed in the '150 patent. In contrast, Defendants' construction aligns with the patent's usage of the terms "section" and "segment" with respect to the border and/or outer cover and is the correct construction.

In addition to misinterpreting the language of the specification, Green Light's apparent construction is also improperly vague when applied to at least the Outlined Products, as demonstrated by Screenshot A3. Specifically, the claim language requires that "the outer cover is divided into two visible segments *by the* light barrier." Notably, this language references a single light barrier. Green Light's annotations to Screenshot A3 (reproduced above) identify an alleged "first light barrier," "second light barrier," and "third light barrier." (Ex. F, p. 70.) None of these alleged light barriers can be understood to individually divide the upper illuminated line from the lower illuminated line *in any sense*.

For example, the alleged first light barrier and second light barrier are depicted along the right side of the sign, whereas the alleged third light barrier is depicted along the left side of the sign. None of the identified light barriers actually extends between the upper illuminated arc and the lower illuminated arc to partition the border in any manner. Even when considered collectively, the three light barriers do

20

not extend between the upper illuminated arc and the lower illuminated arc from one end to the other. This begs the question: what is required to "divide" the outer cover under Green Light's contention? There is no clear answer to this question.

For at least these reasons, there is a real dispute between the parties that requires construction of the limitation "wherein a section of the outer cover defines a cross-sectional shape that is divided into two visible segments by the light barrier." Defendants' construction is solidly grounded on the specification whereas Green Light interprets the term "segment" in a manner contrary to the intrinsic evidence.

Neither explicit redefinition nor disavowal of claim scope is required to impart a definition of "segments" that varies from its plain and ordinary meaning. *E.g.*, *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) ("This clear expression [of intent to define a term] need not be *in haec verba* but may be inferred from clear limiting descriptions of the invention in the specification or prosecution history."). The Federal Circuit has explained that a patentee may define a term in the specification by implication:

> As our en banc opinion in *Phillips* made clear, "a claim term may be clearly redefined without an explicit statement of redefinition" and "[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents."

*Trs. Of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) (citing and quoting *Phillips*, 415 F.3d at 1320-21).

Here, the inventor's consistent and deliberate application of "segment" and

21

"section" warrants a construction that differs from the plain and ordinary meaning, *particularly given that the two words are otherwise interchangeable synonyms under the plain and ordinary meaning*. Without an appropriate construction, "segment" and "section" become equivalents, thereby obliterating the inventor's contrasting naming convention applied throughout the specification. Accordingly, Defendants' construction is the correct construction and should be adopted by the Court.

III.   **"the light barrier extends along a centerline of the elliptical shaped border" (Claim 17)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | "the light barrier extends along a centerline of the cross-sectional shape of the section of the elliptical shaped border" |

The dispute here is best phrased as a question: the "centerline" of what? The only reference to a "centerline" that is found in the specification relates to the embodiment of Figures 8 and 9. As demonstrated by Figure 9 and the excerpt quoted below, the correct answer to this question is that the "centerline" is the centerline of the cross-sectional shape of the section of the border.

22



FIG. 9

**Figure 9 of the '150 Patent**

With respect to the embodiment shown, the '150 patent explains that:

In the illustrated embodiment, *the light barrier 3180 extends continuous along an apex (or centerline) of the border 1180, which is generally elliptical*. As a result, the border 1180 is divided into two visible segments by the light barrier 3180. As a result, during use of the lighting assembly 1000, the border 1180 appears as two discrete borders to an observer with one of the borders being located outside the light barrier 3180 and the other border being located inside the light barrier.

(Ex. A, 9:55-63 (emphasis added).)

Defendants' proposed construction is consistent with the specification in that the centerline is determined based on the cross-sectional shape of the section of the elliptical shaped border. Green Light's apparent construction based on its contentions, by contrast, misinterprets the "centerline" as being the centerline of the elliptical shape of the border, which differs from the actual claim language of the "centerline of the elliptical shaped border." However, there is no support for this interpretation in the specification or drawings.

23

As demonstrated by Figure 8, below, the light barrier 3180 does not extend transversely across the overall shape of the border 1180 (*i.e.* the rounded parallelogram formed by the outline of the border 3180). Instead, the light barrier 3180 overlaps with the border 1180 and extends substantially parallel to the perimeter of the border 1180.



FIG. 8

**Figure 8 of the '150 Patent**

Figures 6 and 7 demonstrate substantially the same arrangement wherein the light barrier 3180 is positioned atop the border 1180, similar to the embodiment of Figures 8 and 9.

The Type 1 light barriers shown in Figures 1-4 do not support Green Light's apparent construction either. As demonstrated by annotated Figure 1, below, the light barrier 318 is positioned adjacent to the "O" and the light barriers 320,322 are positioned on either side of the "N." A centerline has been added (dashed line) extending through the vertices (ends) of the elliptical shape along its longest axis.

24

As shown, none of the light barriers 318, 320, 322 "extends along" the depicted centerline of the overall elliptical shape of the border. In fact, none of the light barriers 318, 320, 322 even intersects the centerline of the overall elliptical shape.



**Figure 1 of the '150 Patent (Annotated)**

Therefore, Green Light's interpretation encompassing a centerline extending across the elliptical shape of the border is unsupported by the intrinsic evidence. In contrast, Defendants' proposed construction is directly supported by Figure 9 and the description thereof and should be adopted.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court adopt their proposed constructions for the disputed claim terms above.

Respectfully submitted this 29th day of April, 2022.

/s/ Seth K. Trimble
Coby S. Nixon (GA Bar No. 545005)
cnixon@taylorenglish.com
Seth K. Trimble (GA Bar No. 851055)
strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Phone: (770) 434-6868
Facsimile: (770) 434-7376

M. Khurram Baig
mkbaig@baiglaw.com
**THE BAIG FIRM**
125 Lawrenceville Street, Suite 100
Norcross, Georgia 30071
Phone: (678) 534-2529
Facsimile: (678) 460-6998

*Attorneys for Defendants Brit-Tech*
*Manufacturer LLC and Ameri*
*Homelink, LLC, d/b/a Maxlit*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing brief was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

<u>/s/ *Seth K. Trimble*</u>
Seth K. Trimble
Attorney for Defendants