# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

GREEN LIGHT INNOVATIONS, INC.,

       *Plaintiff*,

  v.

BRIT-TECH MANUFACTURER LLC, and AMERI HOMELINK, LLC, d/b/a MAXLIT,

       *Defendants.*

No.: 1:21-cv-03605-JPB

_____

## PLAINTIFF GREEN LIGHT INNOVATIONS, INC.'S
## <u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION..................................................................................1

II.   ARGUMENT. ......................................................................................2

    A.  "a light barrier"............................................................................2

       1.  The claims themselves do not support narrowing "a light barrier" beyond its plain and ordinary meaning.......................................................3

       2.  The specification does not support narrowing "a light barrier" beyond its plain and ordinary meaning.......................................................5

       3.  The prosecution history does not support narrowing "a light barrier" beyond its plain and ordinary meaning. .......................................10

    B.  "wherein the outer cover is divided into two visible segments by the light barrier"..............................................................................13

    C.  "the light barrier extends along a centerline of the elliptical shaped border" ........................................................................................20

    D.  A Finding That Terms Should Receive Their Plain and Ordinary Meaning, and Rejecting Defendants' Proposed Construction, Resolves the Parties' Dispute.......................................................................22

III.  CONCLUSION ...................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013) ..............................................................3, 11, 13

*Apple Inc. v. Wi-LAN, Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ......................................................2, 8, 16, 17, 18

*Aventis Pharma S.A. v. Hospira, Inc.*,
  675 F.3d 1324 (Fed. Cir. 2012) ..................................................................18, 19

*Avid Tech., Inc. v. Harmonic, Inc.*,
  812 F.3d 1040 (Fed. Cir. 2016) ........................................................................11

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp,
  Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001) ........................................................................22

*C.R. Bard, Inc. v. Boston Sci. Corp.*,
  250 F.3d 761 (Fed. Cir. 2000) (unpublished) ...................................................22

*Cont'l Circuits LLC .v Intel Corp.*
  915 F.3d 788 (Fed. Cir. 2019) ...............................................................3, 14, 20

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,
  22 F.4th 1361 (Fed. Cir. 2022) ...............................................................7, 10, 21

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ........................................................................22

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) ................................................6, 7, 9, 10, 14, 15

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
  29 F.4th 1376 (Fed. Cir. 2022) ...........................................................................8

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
  244 F.3d 1365 (Fed. Cir. 2001) ...........................................................................22

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ...........................................................................22

*Omega Eng'g. Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ...........................................................................11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .............................................................................5

*Retractable Tech., Inc. v. Becton, Dickinson and Co.*,
  653 F.3d 1296 (Fed. Cir. 2011) ................................................................9, 12, 13

*Takeda Pharm. Co. Ltd. v. Zydus Pharm. USA, Inc.*,
  743 F.3d 1359 (Fed. Cir. 2014) .........................................................................3, 4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) .............................................................................6

*Thorner v. Sony Comput. Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ......................................................14, 15, 16, 17

*Trs. of Columbia Univ. v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016) ....................................................................18, 19

*Unwired Planet, LLC v. Apple Inc.*,
  829 F.3d 1353 (Fed. Cir. 2016) ...............................................................4, 6, 14

## Other Authorities

L.R. 6.5.................................................................................................................1

M.P.E.P. § 2131 .............................................................................................11, 12

## I.   INTRODUCTION.

Pursuant to Patent L.R. 6.5, Plaintiff Green Light Innovations, Inc. ("Green Light" or "Plaintiff") files this responsive claim construction brief.  In this case, all the claim terms in dispute have a plain and ordinary meaning and Defendants do not argue otherwise.  The Federal Circuit does not narrow a claim term beyond its plain and ordinary meaning unless there is support for the additional limitation in the words of the claim, the specification, or the prosecution history.  In this case, there is no support under established claim construction principles in the claims, specification, or prosecution history for deviating from the plain and ordinary meaning and requiring additional limitations as Defendants propose.

Regarding the term "a light barrier," Defendants' proposed construction should be rejected in light of the following: (1) the language of the claims indicates the term should not be so limited; (2) the Federal Circuit has rejected the Defendants' argument that terms should be limited merely because a particular limitation is present in an embodiment described in the specification; and (3) the Federal Circuit has rejected the Defendants' argument that statements made during the prosecution of the patent regarding one claim term, are sufficient to limit a different claim term.

Regarding the terms "wherein the outer cover is divided into two visible segments by the light barrier" and "the light barrier extends along a centerline of the

1

elliptical shaped border," the Federal Circuit has rejected the Defendants' arguments that terms should be limited merely because a particular limitation is present in an embodiment described in the specification.

In sum, all of Defendants' proposed constructions should be rejected.

## II.    ARGUMENT.

### A.    "a light barrier"

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Plain and ordinary meaning, no construction necessary | "a light barrier that is not integrally formed with any part of the housing assembly" |

Defendants argue that, because "a housing assembly" and "a light barrier" are separate recitations in independent claims 1, 8, and 15, a single, integral structure cannot be comprised of both elements such that "a light barrier" should be construed to have the additional limitation of "that is not integrally formed with any part of the housing assembly." Doc. No. 31 at 12. Defendants state that "[t]his understanding flows naturally from the claim structure and finds support in both the specification and the prosecution history for the '150 patent." Doc. No. 31 at 7. However, Defendants' citations to the intrinsic record are insufficient under the laws of claim construction.

"A claim term is generally given its plain and ordinary meaning as understood by a skilled artisan." *Apple Inc. v. Wi-LAN, Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022).

2

"It is axiomatic that [the Federal Circuit does] not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013). In this case, "a light barrier" has a plain and ordinary meaning and there is no support under established claim construction principles in the claims, specification, or prosecution history for requiring the additional limitation of "that is not integrally formed with any part of the housing assembly."

> ### 1.    The claims themselves do not support narrowing "a light barrier" beyond its plain and ordinary meaning.

The "starting point in construing a claim term must be the words of the claim itself." *Takeda Pharm. Co. Ltd. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359, 1363 (Fed. Cir. 2014). Based on the plain language of the claims, "a light barrier" is not limited to a structure "that is not integrally formed with any part of the housing assembly." Doc. No. 32-1, U.S. Patent No. 9,153,150 ("the '150 Patent") at 13:18-31[1]; 13:55-14:8; 14:35-49; *see, e.g., Cont'l Circuits LLC .v Intel Corp.* 915 F.3d 788, 796 (Fed. Cir. 2019) (rejecting the defendant's argument that the claims should be limited to a "repeated desmear process" and noting that "at least based on the plain

---

[1] Citations to the '150 Patent are in the following format: Column No.: Line X-Line Y.

language, the claims are not limited to a repeated desmear process."). Indeed, Defendants do not argue that the language of the claims in which the term appears limits the scope of the term "a light barrier" in the manner they propose, and they do not assert that the ordinary meaning of the phrase itself points to Defendants' proposed restriction. *See* Doc. No. 31 at 7-9.

In addition, Claim 15 recites that "a light barrier is formed separately from and coupled to the outer cover." Doc. No. 32-1 at 14:48-49. This indicates that, if the inventors had desired that the light barrier be formed separately from (*i.e.*, not be integrally formed with) any part of the housing assembly, as Defendants propose, then the inventors could have easily included that limitation into the claims. Thus, in light of this language in Claim 15, the absence of any similar language in the claims, specifying that the light barrier is separate from the housing assembly, supports that Defendants' proposed additional limiting language should be rejected. *Takeda*, 743 F.3d at 1365 (noting that "the remainder of claim 1 demonstrates that the inventors knew how to express ambiguity in claim language when they so desired; it provides that the tablet must have a hardness strength of 'about 1 to about 20kg'" and stating "[p]lainly, then, had the inventors desired the average particle diameter to include a margin of error, they could easily have included the word 'about' in the claim language."); *see also Unwired Planet, LLC v. Apple Inc.*, 829

4

F.3d 1353, 1358-59 (Fed. Cir. 2016) ("[T]he patent contains other claims, for example claim 21, that specifically recite 'establishing a voice communication channel,' a limitation not present in the asserted claims. If the patentee intended to restrict the claims-at-issue to require a voice input to travel over a particular type of channel, it could have included that same limitation.").

In sum, the claims themselves do not support narrowing "a light barrier" beyond its plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.").

### 2.    The specification does not support narrowing "a light barrier" beyond its plain and ordinary meaning.

Citing to Figures 1-3, Col. 4, Lines 4-7, and Col. 6, Lines 1-2, Defendants argue that their construction is supported because, in disclosing multiple embodiments of the invention, the specification discusses light barriers that are integrally formed with the housing compartment of the housing assembly only when the light barriers are understood to be a part of the housing compartment. Doc. No. 31 at 8. Citing Figures 6-9, Col. 4, Lines 8-11, Col. 9, Line 54 to Col. 10, Line 8, Col 10, Line 53 to Col. 11, Line 9, and Col. 11, Lines 46-51, Defendants argue that, for other embodiments, where the specification discusses the light barriers being

5

"coupled" (or formed separately) to the housing compartment, "the '150 patent provides no indication that the light barriers would be understood to be part of the housing assembly under these circumstances." Doc. No. 31 at 9. Thus, Defendants conclude that "if a light barrier is understood to be a separate element from a housing assembly, the light barrier cannot be integrally formed with the housing assembly." Doc. No. 31 at 9-10. However, Defendants do not even come close to satisfying the standard required for limiting claim language based on the specification.

The Federal Circuit has repeatedly recognized that "[w]e depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Defendants do not argue lexicography (*i.e.*, patentee clearly setting forth a definition) applies to this term. Doc. No. 31 at 7-9. The standard for finding disavowal is "exacting." *Hill-Rom*, 755 F.3d at 1371.

"A disclaimer or disavowal of claim scope must be clear and unmistakable, requiring 'words or expressions of manifest exclusion or restriction' in the intrinsic record." *Unwired*, 829 F.3d at 1358 (*quoting Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). "Disavowal requires that 'the specification [or prosecution history] make[] clear that the invention does not include a particular feature,' or is clearly limited to a particular form of the invention." *Hill-Rom*, 755

6

F.3d at 1372 (internal citation omitted).  For example, the Federal Circuit has held that disclaimer applies in the following situations: "when the patentee makes statements such as 'the present invention requires . . .' or 'the present invention is . . .' or 'all embodiments of the present invention are . . .'"; "when the specification indicated that for 'successful manufacture' a particular step was 'require[d]'"; "when the specification indicated that the invention operated by 'pushing (as opposed to pulling) forces,' and then characterized the 'pushing forces' as 'an important feature of the present invention'"; and "when the specification described that feature as a 'very important feature . . . in an aspect of the present invention' and disparaged alternatives to that feature."  *Id.*

None of the above examples are present in this case and Defendants do not argue otherwise.  Instead, Defendants merely argue that certain embodiments in the specification describe a light barrier that is integrally formed with the housing assembly and other embodiments do not.  Doc. No. 31 at 8-9.  Such an argument has been rejected by the Federal Circuit on numerous occasions.

The Federal Circuit has "repeatedly held that it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning." *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1367 (Fed. Cir. 2022) (internal quotation marks and citations

7

omitted).  "Embodiments in the specification – even if there is only one embodiment – cannot limit the scope of the claims absent the patentee's 'words of expression of manifest exclusion or restriction.'"  *Apple*, 25 F.4th at 967 (internal citation omitted).

Thus, in *Littelfuse, Inc. v. Mersen USA EP Corp.*, similar to this case, the Federal Circuit rejected the district court's construction of "fastening stem" and the district court's finding that the claims did not cover an apparatus formed from a single-piece of material.  29 F.4th 1376, 1380-81 (Fed. Cir. 2022).  The court noted that "[t]urning to the specification, it is true that the detailed description refers to a 'fastening stem' only with respect to the 'assembled end cap' embodiment, which is a multi-piece apparatus."  *Id*. at 1381.  However, the court stated that "as we have cautioned, courts ordinarily should not limit 'the claimed invention to preferred embodiments or specific examples in the specification" and found that "[n]othing in the specification states that a fastening stem cannot be present in a single-piece apparatus."  *Id*.  The court noted that, on remand, "[t]he district court should adjust the construction of those claim terms so as to allow for the independent claims to cover both single-piece and multi-piece embodiments."  *Id*.

As in *Littelfuse*, nothing in the specification states that "a light barrier" cannot be integrally formed with any part of the housing assembly.  Rather, the specification expressly states the contrary: "In the illustrated embodiment, the light barriers 318,

8

320, 322 are integrally formed as part of the housing compartment 114."[2]  Doc. No. 32-1 at 4:6-8; *see also Retractable Tech., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1303-04 (Fed. Cir. 2011) (affirming construction that "retaining member" and "needle holder" need not be two separate parts and finding that "[t]he specifications also indicate that the 'needle holder' and the 'retainer member' need not be separately molded pieces" and "could be formed as an integral structure.").

Moreover, the specification explains that the claims are not limited to the illustrated embodiments.  Doc. No. 32-1 at 12:60-13:10. The specification refers to the drawings as showing "one suitable embodiment" and "another suitable embodiment."  Doc. No. 32-1 at 2:47-48; 9:21-211; 11:51-52.  The specification states that "[a]lthough specific features of various embodiments may be shown in some drawings and not in others, this is for convenience only" and "[a]ny feature of any drawing may be referenced and/or claimed in combination with any feature of any other drawing."  Doc. No. 32-1 at 2:39-43; see also 2:6-13.

Such statements do not support clear and unmistakable disclaimer or disavowal of claim scope.  *Hill-Rom,* 755 F.3d at 1373 (finding "no basis for deviating from the plain and ordinary meaning" and noting "this specification states

---

[2] The '150 Patent states that "[i]n the illustrated embodiment, the housing assembly 102 includes . . . a housing compartment."  Doc. No. 32-1 at 3:5-7.

that the figures depicting the use of a wired datalink merely 'illustrate embodiments of the invention.'"); *Evolusion*, 22 F.4th at 1367 (construing "the term 'magazine catch bar' according to its ordinary meaning, which includes a factory-installed magazine catch bar," the court noted that "[t]he specification reiterates the background principle that the claims are not limited to the illustrated embodiments.'").

Thus, the specification does not support narrowing "a light barrier" beyond its plain and ordinary meaning. *See, e.g., Hill-Rom*, 755 F.3d at 1372 (finding no disclaimer or lexicography and noting that "[t]he patents-in-suit do not describe the invention as limited to a wired datalink. There is no disclosure that, for example, the present invention 'is,' 'includes,' or 'refers to' a wired datalink and there is nothing expressing the advantages, importance, or essentiality of using a wired as opposed to wireless datalink.").

### 3.    The prosecution history does not support narrowing "a light barrier" beyond its plain and ordinary meaning.

Defendants argue that the prosecution history related to the "cover assembly" limitations of the claims, but not the "light barrier" limitation at issue, supports their position. Doc. No. 31 at 11. The Federal Circuit "does not rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise

10

be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." *3M*, 725 F.3d at 1322. "When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).

"'[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statement made during prosecution be both clear and unmistakable.'" *Avid*, 812 F.3d at 1045 (*quoting Omega Eng'g. Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)). "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Federal Circuit has] declined to find prosecution disclaimer." *Id.* (internal citation omitted). Defendants' asserted statement in this case does not even address the claim term at issue, much less provide a "clear and unmistakable" disavowal.

More specifically, the relevant claim language Defendants contend was at issue during the prosecution was "the cover assembly including at least one inner cover defining a word and an outer cover at least in part defining a border surrounding the word defined by the inner cover." Doc. No. 31-3 at 3. The Examiner contended that U.S. Patent No. 3,758,973 disclosed this element. *Id.* The patentee responded to this argument by first noting that "the test under M.P.E.P. § 2131

11

requires that each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference and the elements must be arranged as required by the claim." Doc. No. 31-5 at 9.

The patentee then noted that U.S. Patent No. 3,758,973 failed to teach each and every limitation, as required by § 2131, as it did not disclose an "inner cover" and an "outer cover" as recited in the claims, but instead merely disclosed "a single, integral cover." Doc. No. 31-5 at 9-10. Defendants then argue that "[s]imilar to Green Light's position that a single, integral structure cannot be both 'an inner cover' and 'an outer cover,' here, a single integral structure cannot be both 'a housing assembly' and 'a light barrier" because "[s]eparate recitation of these structures requires more." Doc. No. 31 at 12. The Federal Circuit has rejected this argument that a statement regarding another claim limitation can amount to a clear and unmistakable disavowal.

In *Retractable*, similar to this case, the defendant argued that "retainer member" and "needle holder" "must be separate pieces because the asserted claims list the 'retainer member' and 'needle holder' as separate claim limitations." 653 F.3d at 1303. The Federal Circuit rejected this argument and noted that the prosecution history did not compel a different result. *Id*. at 1304. During prosecution, the patentee distinguished the prior art because a "barrel" was made of one piece, but

12

the argument did not address the "whether the needle assembly and retainer member . . . can cover distinct structural portions of an integral structure." *Id*. The Federal Circuit held that "the inventor's statement, on its own, lacks the clarity required to exclude from the scope of the claims a needle holder and a retainer member that form distinct portions of a single structure." *Id*.

As in *Retractable*, statements made during prosecution regarding a different claim limitation, "cover assembly," cannot amount to a clear and unmistakable disavowal of claim scope regarding the "a light barrier" limitation. This does not even rise to the level of ambiguity or competing interpretations, which the Federal Circuit has rejected as insufficient. *3M*, 725 F.3d 1315, 1326 (declining to find disclaimer in the prosecution history where there were competing interpretations for the reason for an amendment to distinguish claims from the prior art).

In sum, the claims, specification, and prosecution history do not support narrowing "a light barrier" beyond its plain and ordinary meaning.

**B.    "wherein the outer cover is divided into two visible segments by the light barrier"**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Plain and ordinary meaning, no construction necessary | "wherein a section of the outer cover defines a cross-sectional shape that is divided into two visible segments by the light barrier" |

13

The term "wherein the outer cover is divided into two visible segments by the light barrier" has a plain and ordinary meaning. The plain language of the claims does not support adding Defendants' proposed limitation. *Cont'l Circuits*, 915 F.3d at 796. Defendants do not argue otherwise. Defendants do not argue that the prosecution history supports adding their proposed limitation.

Instead, Defendants argue that their proposed construction should be adopted because "segments" "refer to portions of the cross-sectional shape of the respective border section(s) rather than to the overall shape defined by the border 1180 (*i.e.*, the rounded parallelogram shape shown in Figure 8)" and "cannot refer to discrete portions of a discontinuous border." Doc. 31 at 19-20. Citing portions of the specification, Defendants attempt to justify adding limitations to the claim language by arguing that "the inventor's consistent and deliberate application of 'segment' and 'section' warrants a construction that differs from the plain and ordinary meaning, particularly given that the two words are otherwise interchangeable synonyms under the plain and ordinary meaning." Doc. No. 31 at 21-22.

"The standards for finding lexicography and disavowal are exacting." *Hill-Rom*, 755 F.3d at 1371. "The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Comput. Ent. Am.*

14

*LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).  As noted above, disavowal of claim scope must be clear and unmistakable.  *Unwired*, 829 F.3d at 1358.

"'To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning' and must 'clearly express an intent to redefine the term.'" *Hill-Rom*, 755 F.3d at 1371 (internal citation omitted).  "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Thorner*, 669 F.3d at 1365.  As examples, a patentee has acted as his own lexicographer when it has stated "Multiple embossed means . . ." or "the solubilizers suitable according to the invention are defined below." *Id*. at 1366.  Whether under a lexicography or a disavowal theory, Defendants' citations to the '150 Patent fail to justify departing from the plain and ordinary meaning of "wherein the outer cover is divided into two visible segments by the light barrier."

Defendants argue that "the '150 patent imparts a specific meaning to the term 'segment' that is quite different from the meaning of 'section'" where "'segment(s)' appears seven (7) times in the specification, and each usage refers to a portion of the cross-sectional shape of a structure." Doc. No. 31 at 17.  Defendants thus conclude that "the inventor's use of 'segments' in the '150 patent cannot refer to discrete

15

portions of a discontinuous border" and instead "it is clear that the 'segments' in question refer to portions of the cross-sectional shape of the respective border section(s) rather than to the overall shape defined by the border 1180 (*i.e.*, the rounded parallelogram shape shown in Figure 8)." Doc. No. 31 at 19-20. Once again, however, this argument has been rejected by the Federal Circuit.

Defendants' argument was rejected in *Thorner*, a similar case, where the Federal Circuit rejected the district court's construction of "attached" as being "limited to attached to the outside of an object because the embodiments in the specification consistently use the term 'attached' to indicate affixing an actuator to the outer surface of an object and use the word 'embedded' when referring to an actuator inside an object." 669 F.3d at 1365. In so holding that this did not rise to the level of lexicography, the Federal Circuit noted that "[i]f the applicant had redefined the term 'attached' to mean only 'attached to an outer surface, then it would have been unnecessary to specify that the attachment was 'to [an] outer surface' in the specification." *Id.* at 1368. The court also noted that "[s]imply referring to two terms as alternatives or disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term." *Id.*

Defendants' argument was also rejected in *Apple Inc.*, where the defendant argued that the claim term "subscriber unit" was defined by the patentee to mean

16

"customer premises equipment," in part, because "the patents' use of [customer premises equipment] as the sole embodiment of the subscriber unit is a redefinition." 25 F.4th at 967-969. The Federal Circuit rejected this argument because there were no words or expressions of manifest exclusion or restriction in the specification and "[n]othing in the written description makes clear that the invention is limited to a [customer premises equipment]." *Id*. at 968. In so holding, the Federal Circuit noted the following: (1) "[t]here is no disclosure that, for example the present invention is, includes, or refers to a [customer premises equipment]"; (2) "[n]or are there any statements expressing the advantages, importance, or essentiality of using a [customer premises equipment] as opposed to a subscriber unit"; and (3) "there is some language suggesting the embodiments are not limiting" (*e.g.,* "[t]hroughout this description, the preferred embodiment and examples shown should be considered as exemplars rather than as limitations on the present invention"). *Id*.

The holdings of *Thorner* and *Apple* apply in this case. Just as in *Thorner*, Defendants argue "consistent use" of the term "segment" with respect to a disclosed embodiment justifies departure from the plain and ordinary meaning. Doc. No. 31 at 21-22. Just as in *Thorner*, Defendants' "consistent use" argument does not rise to the level of lexicography. *Thorner*, 669 F.3d at 1368. Indeed, in the '150 Patent, the patentee has not used statements like "segment means . . ." or "the segments

17

according to the invention are defined below," indicating that the patentee has not acted as his own lexicographer. *Id*. at 1366.

As in *Apple*, there were no words or expressions of manifest exclusion or restriction in the specification and nothing in the written description makes clear that the invention is limited to "a section of the outer cover defin[ing] a cross-sectional shape that is divided into two visible segments by the light barrier" as Defendants' propose. *Apple*, 25 F.4th at 968. As in *Apple*, there is no disclosure that "the present invention is" limited to such a section and no statements expressing the importance of such a section as limited by Defendants. *Id*. In addition, as noted previously, and as in *Apple*, there is language in the '150 Patent suggesting that embodiments are not limiting. *Id*; Doc. No. 32-1 at 2:6-13; 2:39-43; 2:47-48; 9:21-211; 11:51-52; 12:60-13:10.

Defendants cite to *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012), and *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016), for the proposition that neither explicit redefinition nor disavowal of claim scope is required to impart a definition of "segments" that varies from its plain and ordinary meaning. Doc. No. 31 at 21. *Aventis* actually reaffirms that the Federal Circuit "will only interpret a claim term more narrowly than its ordinary meaning under two circumstances: '1) when a patentee sets out a definition

18

and acts as [its] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'"  675 F.3d at 1330 (internal citation omitted).  Further, *Aventis* supports Plaintiff's position, finding that neither lexicography or disavowal applied, and holding that "the patentee did not narrow the ordinary meaning of 'perfusion.'"  *Id*. at 1331.  In that case, the Federal Circuit once again noted, contrary to Defendants' consistent argument in this case, "'[i]t is . . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation' to limit a claim term beyond its ordinary meaning."  *Id*.  at 1330 (internal citation omitted).

The *Symantec* case is readily distinguishable.  In that case, the Federal Circuit affirmed the district court's construction of "byte sequence feature" to mean "[f]eature that is a representation of machine code instructions of the executable."  *Symantec*, 811 F.3d at 1364-65.  In so holding, the Federal Circuit noted that the specification touted "byte sequence feature" as useful and informative "because it represents the machine code in an executable."  *Id*. at 1365.  The intrinsic record also touted the importance of "byte sequence feature" representing machine code by stating "'[t]he byte sequence feature is the most informative because it represents the machine code in an executable instead of resource information,' which is not made of machine code instructions."  *Id*. (internal citation omitted).  There are no such

19

statements in the '150 Patent emphasizing the importance of "segment" with respect to a cross-sectional shape.  Therefore, the Federal Circuit's holding in *Symantec* does not apply.

Thus, contrary to Defendants' assertion, the specification does not support narrowing "wherein the outer cover is divided into two visible segments by the light barrier" beyond its plain and ordinary meaning.  In sum, "wherein the outer cover is divided into two visible segments by the light barrier" has a plain and ordinary meaning and there is no support under established claim construction principles in the claims, specification, or prosecution history for requiring Defendants' proposed additional limitations.

**C.     "the light barrier extends along a centerline of the elliptical shaped border"**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Plain and ordinary meaning, no construction necessary | "the light barrier extends along a centerline of the cross-sectional shape of the section of the elliptical shaped border" |

The term "the light barrier extends along a centerline of the elliptical shaped border" has a plain and ordinary meaning.  The plain language of the claims does not support adding Defendants' proposed limitation.  *Cont'l Circuits*, 915 F.3d at

20

796.  Defendants do not argue otherwise.  Defendants do not argue that the prosecution history supports adding their proposed limitation.

Defendants argue that their proposed construction "is consistent with the specification in that the centerline is determined based on the cross-sectional shape of the section of the elliptical shaped border."  Doc. No. 31 at 23.  Defendants point to examples in the specification including an example shown in Figure 9, which "is a cross-sectional view of the cover assembly along line 909 of Figure 8."  Doc. No. 31 at pp. 23-24.  Figure 9 does appear to show a light barrier that is centered in a cross-sectional view of the cover assembly.  Doc. No. 31 at 23.

Once again, Defendants have not, and cannot, satisfy the standard for deviating from the plain and ordinary meaning of "the light barrier extends along a centerline of the elliptical shaped border."  As noted above, the law is clear that, just because some embodiments contain a particular limitation, that is not enough to limit claims beyond their plain meaning. *Evolusion*, 22 F.4th at 1367.  For all the same reasons set forth in the above sections, and contrary to Defendants' assertion, the specification does not support narrowing "the light barrier extends along a centerline of the elliptical shaped border" beyond its plain and ordinary meaning.  In sum, "the light barrier extends along a centerline of the elliptical shaped border" has a plain and ordinary meaning, and there is no support under established claim construction

21

principles in the claims, specification, or prosecution history for requiring Defendants' proposed additional limitations.

**D.    A Finding That Terms Should Receive Their Plain and Ordinary Meaning, and Rejecting Defendants' Proposed Construction, Resolves the Parties' Dispute.**

Defendants argue that "there is a fundamental dispute between the parties regarding the scope of [the disputed terms] that the Court will need to resolve." Doc. No. 31 at 7, 14, 21 *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Defendants purport to argue that a finding by this Court that the terms should receive their plain and ordinary meaning would be insufficient. Doc. No. 31 at 7. This is incorrect.

The Federal Circuit has routinely affirmed a district court's holding that a district court need not construe terms or depart from ordinary meanings. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (rejecting defendant's argument that the district court erred by failing to construe "melting" and noting "the meaning of 'melting' does not appear to have required 'construction,' or to depart from its ordinary meaning"); *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (holding "that the district court did not err in relying on the ordinary meanings of these terms"); *C.R. Bard, Inc. v. Boston Sci. Corp.*, 250 F.3d 761 (Fed. Cir. 2000) (unpublished)

22

(finding no error in district court's holding that "it would not construe the 'thereby' clause because the claim limitation was clear in its meaning"); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010)(rejecting argument that new trial was required because the district court erred by failing to construe a term where the district court construed the term as having its plain and ordinary meaning). There is no need for the Court to deviate from this established precedent here.

## III.   CONCLUSION.

Defendants have not identified any reason to deviate from the plain and ordinary meaning of the disputed terms.  Accordingly, Plaintiff respectfully requests that the Court reject Defendants' proposed construction and find that the disputed terms should be given their plain and ordinary meaning.

Date: June 10, 2022.                     Respectfully submitted,

                                         */s/ Puja Patel Lea*

                                         **TROUTMAN PEPPER**
                                         **HAMILTON SANDERS LLP**
                                         Puja Patel Lea
                                         (Ga. Bar No. 320796)
                                         Eric M. Pettis
                                         (Ga. Bar No. 360485)
                                         600 Peachtree Street, NE, Suite 3000
                                         Atlanta, Georgia 30308
                                         (404) 885-3000
                                         puja.lea@troutman.com
                                         eric.pettis@troutman.com

                                         **STINSON LLP**
                                         B. Scott Eidson (*Admitted Pro Hac*
                                         *Vice*)
                                         Julie Scheipeter (*Admitted Pro Hac*
                                         *Vice)*
                                         7700 Forsyth Boulevard, Suite 1100
                                         Saint Louis, Missouri 63105
                                         (314) 863-0800
                                         scott.eidson@stinson.com
                                         julie.scheipeter@stinson.com

                                         *Attorneys for Plaintiff*
                                         *Green Light Innovations, Inc.*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the foregoing complies with the font and point selection approved by this Court in Local Rule 5.1(B).  This paper was prepared on a computer using Times New Roman fourteen-point font, double-spaced.


/s/ *Puja Patel Lea*

25

## CERTIFICATE OF SERVICE

I hereby certify on June 10, 2022 that I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to all counsel of record.

/s/ *Puja Patel Lea*